## Haehnlen Estate

*M. Paul Smith, John C. Gilpin, C. Brewster Rhoads* and *W. H. Lathrop* for accountants.

*High, Swartz, Childs, Roberts and More; James, Wright and Gibbons; J. Warren Brock* and *Joseph Neff Ewing* for legatees.

*Edward J. Ozorowski,* Special Assistant Attorney General, for Commonwealth.

494

TAXIS, JR., P. J., Apr. 1, 1960. — Florence H. Haehnlen, also known as Florence Holt Haehnlen, died on January 3, 1959, leaving a will dated August 17, 1956, duly probated on January 9, 1959, on which the present letters were granted to the accountants, who were appointed executors.

The will, after first bequeathing a number of pecuniary legacies, all of which are payable, directed, under item 21, that the residuary estate be divided into three equal shares, one of which shares is to be held in trust for the benefit of Marie E. Haehnlen, to pay her the income during her life and upon her death to pay the income equally to Walter H. Killian and Elizabeth K. Bixler during their respective lives; at the death of Walter H. Killian, to pay his share of income to his wife during her life or until her remarriage and on her death or remarriage to pay the principal of this share to the issue of Walter H. Killian and at the death of Elizabeth K. Bixler, to pay the principal of her share to her issue.

The income of another one-third share of principal is to be held in trust and the income paid to Alice H. Killian during her life, and at her death to pay said income equally to Walter H. Killian and Elizabeth K. Bixler, with like provisions as to payment of income to Walter H. Killian's wife and as to payment of remainders of principal as is above set forth with respect to the trust of the first third.

The third one-third share of the residue is to be held in trust and the net income paid to Reba B. Moore, Reba Moore Creager and Jane Tyson, in succession, for their respective lives or for the life of the survivor of them, and upon the death of the survivor the principal of this one-third share is to be paid equally to Jefferson Medical College of Philadelphia and Bryn Mawr Hospital as memorials to testatrix.

Item 22 of the will provides as follows:

"I direct that all transfer, inheritance, legacy, estate and succession taxes, and all other taxes in the nature thereof, whether State or Federal, that may become payable by reason of my death, with respect to the property comprising my gross estate for tax purposes, whether or not such property passes under this my Will, and including jointly owned property and life insurance, shall be paid out of the principal of my residuary estate. I authorize my Executors to pay all such taxes at such time or times as they deem advisable."

A question for adjudication has arisen as to whether the residue shall be determined before or after the payment of such taxes and, therefore, whether the three trusts of the residue shall bear the impact of such taxes equally in view of the direction contained in item 22 of the will, which directs that all taxes be paid from principal of the residue. The court is advised that the taxes will exceed $800,000.

The individual remainder legatees will be benefited if these taxes are charged pro rata against the three funds into which the residue is to be divided while the charitable legatees on the other hand will be benefited if the taxes are charged solely against the remainders of the trusts of the other two thirds of the residue.

The two hospitals, charitable remaindermen, argue that the one-third share of residue which they will ultimately receive should not bear any proportion of the inheritance and estate taxes because the gifts to them are, by statute, exempt from Federal and estate death taxes; that these charitable exemptions apply in the present case so that the bequests to the hospitals should be paid to them without deduction for any tax.

The other residuary legatees argue, however, that, conceded the charitable exemption does reduce the

amount of the taxes imposed and due under Federal and State laws, yet where testatrix has directed that these taxes be paid from residue, such residue cannot be computed until the tax is paid in full, as well as all administration costs, debts, funeral expenses and legacies; that these taxes imposed are tantamount to settlement costs in the computation of residue. Thus, where testatrix has expressly provided or directed that all taxes be paid from the residue, it would be wholly unfair and inequitable for the charities to be exonerated from paying their pro rata share of taxes contrary to the express directions of the testatrix. The charities do benefit from the exemption to the extent that the final tax imposed is thus reduced by reason thereof. The argument that the individual legatees thus also benefit by reason of these exemptions, which concededly they do, is unimportant.

Although the Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, 20 PS §881, repealed the Proration Act of July 2, 1937, P. L. 2762, for present purposes those acts are similar so that cases decided under the prior law are still valid and binding.

In Stadtfeld's Estate, 359 Pa. 147, it was held that the proration acts create a presumption that proration was intended, unless testator, by language which was clear and without doubtful import, expressed an intention to overcome this presumption of proration.

The single question, therefore, is whether the language of article 22 of the will constitutes a clear expression of intention to overcome this presumption of proration.

In Audenried's Estate, 376 Pa. 31, 32 testatrix provided for pecuniary legacies to various legatees, then gave the residuary estate "to the pecuniary legatees under this my Will, in the same proportions as their original legacies bear to all money bequests hereunder." Testatrix then directed as follows:

"I direct that all estate, inheritance, succession or similar taxes on all legacies herein contained in my Will shall be paid from my residuary estate, and be charged to principal thereof."

In the Audenried case the charitable legatees there argued that the phrase "all legacies herein contained in my Will" applied only to the pecuniary legacies and did not apply to the residuary gifts; that testatrix's intention as set forth in her will was at least of doubtful import and that such doubt should be resolved in favor of the charitable remaindermen. The court dismissed the arguments of the charities and imposed tax upon the residuary share of the estate, including the charities. The court said:

"An examination of this will from its four corners satisfies us of the correctness of the Auditing Judge's conclusion. The residuary clause contains the key to the solution of the problem. Therein the testatrix gives specifically the residue to the 'pecuniary legatees' in the same proportions as their 'original legacies', indicating that she knew how to distinguish different types of legacies. It necessarily follows that when she used the term 'all legacies herein contained in my Will' that she intended to apply it in an all-embracing sense comprehending pecuniary legacies as well as residuary legacies. To restrict testatrix's definition of 'all legacies' to pecuniary legacies is artificial. We believe she used the phrase in the generic sense to include all of her testamentary gifts, in the same sense as similar legislative phraseology has been construed: Desh's Estate, 321 Pa. 286; Norris's Estate (No.3), 217 Pa. 560."

The charities attempt to distinguish Audenried's Estate, supra, from the present case by arguing that "The Pennsylvania Act of 1955 exempting charitable bequests from liability for transfer tax had not even been passed at that time. This Act expressly says, 'no

transfer inheritance tax shall be imposed upon the transfer of any property, real or personal, . . . to or for the use of any corporation . . . organized and operated, exclusively, for religious, charitable, scientific, literary or education purposes. . . .' " From this statutory language the charities argued that ". . . to hold the remainder interests of the hospitals liable for payment of any part of the Pennsylvania Transfer Inheritance Tax would be directly contrary to the provisions of this Act."

This argument is without merit for the simple reason that testatrix clearly directed in her will that all of residue, not just the noncharitable residue, should assume the tax burden. If testatrix wished to specifically impose the tax burden on only the noncharitable portion of residue, it would have been relatively easy for her to say so. Care must be made to distinguish between the imposition of a tax and the responsibility for its payment. The former is fixed by the statute imposing the tax, whereas the latter is a burden imposed by the will. The mere fact that the legislature deemed it appropriate to exempt charitable legacies from the imposition of a tax does not thereby deprive a testator of the right to direct that the charitable legatees participate in assuming the tax burden ultimately found to be due by the estate. True, the net result may be that the charities contribute to the payment of a tax, but this is not a result of anything statutorily imposed but rather a testamentary direction of the testatrix. This right of a testatrix to decide who should assume this tax burden was not taken away from her by reason of the statutory exemption granted to charitable legatees.

North's Estate, 50 D. & C. 703, is also helpful and in point. In that case Judge Klein said:

"We all agree with the hearing judge that the Tax Apportionment Act of July 2, 1937, P. L. 2762, has

no application to the present case, as the testatrix has in her will plainly designated the manner in which the Federal estate taxes are to be paid.

"In our opinion, the direction to pay the estate taxes 'out of the corpus or principal of my residuary estate' indicates that testatrix intended that all taxes be paid in full before distribution is made of the residue. This conclusion is strengthened by testatrix's obvious desire for equality in distribution among the various legatees. After bequeathing one-half of the 'rest, residue and remainder' of her estate to her two cousins, she directed a division of the 'remaining one-half' into 'seventeen equal parts or shares' among the specified individuals and charities. Each of these shares was the subject matter of a separate paragraph commencing with the phrase 'One equal part or share thereof I give, devise and bequeath to . . .' She thus emphasized, not once, but repeatedly and separately for each gift, that she intended the shares of all the beneficiaries to be equal in amount. If we adopt exceptants' contention, distribution would be made in unequal amounts as the net shares of the charities would be greater than those of the individual beneficiaries. We cannot permit this result without doing violence to testatrix's clearly-expressed intention. See Brown's Estate, 208 Pa. 161."

It is clear from the reading of her will, and particularly section 22, and considered in the light of the rules pronounced by Audenried's Estate and North Estate, supra, that these charities should bear a proportionate share of the tax burden.

I conclude, therefore, that Audenried's Estate and North's Estate rule this case and require that the charities must bear their share of the total tax. . . .

And now, April 1, 1960, this adjudication is confirmed nisi.